# [NOT YET SCHEDULED FOR ORAL ARGUMENT]

## No. 15-5041

## (Consolidated with 15-5043, 15-5060, and 15-5061)

IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

HUMANE SOCIETY OF THE UNITED STATES, *et al.*,

Plaintiffs-Appellees,

v.

S.M.R. JEWELL, *et al.*,

STATE OF WISCONSIN, *et al.*, and

U.S. SPORTSMEN'S ALLIANCE FOUNDATION, *et al.*,

Defendants-Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

FINAL BRIEF OF AMICI CURIAE FOR THE STATES OF WYOMING, COLORADO, IDAHO, KANSAS, MONTANA, NEW HAMPSHIRE, NORTH DAKOTA, AND UTAH IN SUPPORT OF DEFENDANTS-APPELLANTS AND INTERVENOR-DEFENDANTS-APPELLANTS AND IN SUPPORT OF REVERSAL OF THE DECISION OF THE DISTRICT COURT

Peter K. Michael
Attorney General of Wyoming

James Kaste
Michael J. McGrady
D. David DeWald
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
*Counsel for Amicus Curiae State of Wyoming*

Cynthia Coffman
Attorney General of Colorado
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
(720) 508-6030 *facsimile*
*Counsel for Amicus Curiae*
*State of Colorado*

Lawrence G. Wasden
Attorney General of Idaho
P.O. Box 83720
Boise, Idaho 83720-0010
(208) 334-2400
(208) 854-8071 *facsimile*
*Counsel for Amicus Curiae*
*State of Idaho*

Derek Schmidt
Attorney General of Kansas
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
(785) 296-2215
(785) 296-6296 *facsimile*
*Counsel for Amicus Curiae*
*State of Kansas*

Timothy C. Fox
Attorney General of Montana
215 N. Sanders, 3rd Floor
Helena, MT 59620
(406) 444-2026
(406)444-3549 *facsimile*
*Counsel for Amicus Curiae*
*State of Montana*

Joseph A. Foster
Attorney General of New Hampshire
33 Capitol Street
Concord, New Hampshire 03301
(603) 271-3658
(603) 271-2110 *facsimile*
*Counsel for Amicus Curiae*
*State of New Hampshire*

Douglas A. Bahr
Solicitor General of North Dakota
500 N. 9th Street
Bismarck, North Dakota 58501-4509
(701) 328-3640
(701) 328-4300 *facsimile*
*Counsel for Amicus Curiae*
*State of North Dakota*

Sean D. Reyes
Attorney General of Utah
350 North State Street, Suite 230
Salt Lake City, Utah
(801) 538-9600
(801) 538-1121 *facsimile*
*Counsel for Amicus Curiae*
*State of Utah*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Under D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

A. **Parties and Amici**. Except for the amici curiae joining this brief, all parties, intervenors, and amici curiae appearing before the district court and in this court are listed in the Opening Brief for the federal Defendants-Appellants. (Doc. No. 1582499). The States joining the instant brief in support of Defendants-Appellants and Intervenor-Defendants-Appellants are Wyoming, Colorado, Idaho, Kansas, Montana, New Hampshire, North Dakota, and Utah.

B. **Rulings under Review.** The rulings under review were issued by the United States District Court for the District of Columbia, Honorable Beryl A. Howell, in *Humane Society of the United States v. Jewell*, No. 13-186, 76 F. Supp. 3d 69 (D.D.C. Dec. 19, 2014). The challenged rulings are the Memorandum Opinion and Order which granted plaintiffs' motion for summary judgment and, ultimately, set aside the final rule delisting wolves within the area at issue and reinstated the prior rule. (Doc. Nos. 52 and 53).

C.    **Related Cases.** To the best of Amici's knowledge, the case on review has not been before this or any other court as defined by D.C. Circuit Rule 28(a)(1)(C).

DATED this 8th day of June, 2016.

/s/ D. David DeWald
D. David DeWald
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
david.dewald@wyo.gov

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........... iii

A.    Parties and Amici ............................................................................. iii

B.    Rulings under Review ....................................................................... iii

C.    Related Cases ....................................................................................iv

TABLE OF CONTENTS ...................................................................................v

TABLE OF AUTHORITIES .............................................................................vi

GLOSSARY ................................................................................................... viii

STATEMENTS OF IDENTITY, AUTHORITY TO FILE, AND INTEREST ........1

PERTINENT STATUTES AND REGULATIONS .................................................2

SUMMARY OF ARGUMENT .............................................................................2

ARGUMENT ......................................................................................................3

I.    THE DISTRICT COURT FAILED TO CONSIDER ONE OF THE ESA'S
      MAIN OBJECTIVES: FEDERAL-STATE COOPERATION ......................4

II.   THE DISTRICT COURT'S RULING WILL DISCOURAGE STATES
      FROM ACTIVELY PARTICIPATING IN ESA MANAGEMENT AND
      CONSERVATION EFFORTS ......................................................................8

CONCLUSION .................................................................................................14

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE
OF APPELLATE PROCEDURE 32(A) ..............................................................18

CERTIFICATE OF SERVICE ...........................................................................19

# TABLE OF AUTHORITIES

## CASES

*Cannon v. District of Columbia*,
717 F.3d 200 (D.C. Cir. 2013) ....................................................5

*Coleman v. Dretke*,
409 F.3d 665, 667 (5th Cir. 2005) ..............................................5

*Greater Yellowstone Coal., Inc. v. Servheen*,
672 F. Supp. 2d 1105 (D. Mont. 2009) .....................................11

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) .....................................................................7

*Seifert v. Winter*,
555 F. Supp. 2d 3 (D.D.C. 2008) ...............................................5

## STATUTES

16 U.S.C. §§ 1531-1544 ................................................ vii, 1, 2

*16 U.S.C. § 1532 .........................................................................2

16 U.S.C. § 1533 .........................................................................7

16 U.S.C. § 1535 .........................................................................4

*16 U.S.C. § 1553 .........................................................................2

## ADMINISTRATIVE MATERIALS

*59 Fed. Reg. 34,275 (July 1, 1994).................................5, 6, 7

72 Fed. Reg. 14,866 (Mar. 29, 2007) .................................11, 12

76 Fed. Reg. 81,666 (Dec. 28, 2011)..........................................3

## LEGISLATIVE HISTORY

*Endangered Species: Hearings on H.R. 37 Before the Subcomm. on Fisheries and Wildlife Conservation*, 93rd Cong. 327 (1973) (Statement of Rep. John Breaux) ........................................................8, 14

## OTHER AUTHORITIES

Jean O. Melious, *Enforcing the Endangered Species Act Against the States*, 25 Wm. & Mary Envtl. L. & Pol'y Rev. 605 (2001) ................................................6

Remarks of Governor Matthew H. Mead, *Endangered Species Act Reform* at 1 (Sept. 29, 2015), http://www.epw.senate.gov/public/_cache/files/08739d01-3f01-4b2c-8189-6beb2b22f738/gov.-mead-testimony.pdf. ....................................... 12-13

Remarks of Governor Steve Bullock, *Improving the Endangered Species Act: Perspectives from the Fish and Wildlife Service and State Governors* at 9 (Sept. 29, 2015) http://www.epw.senate.gov/public/_cache/files/2d20e187-0451-43f5-b871-7bb79ac62348/govbullock-senate-epw-testimony-9-29-15.pdf .............................13

Statement of Dan Ashe, *Improving the Endangered Species Act: Perspectives from the Fish and Wildlife Service and State Governors*, at 2 (Sept. 29, 2015), http://www.epw.senate.gov/public/_cache/files/e1e9e359-21af-481d-9b4d-7024332ef5a3/ashe-esa-testimony.pdf .................................................................. 4-5

Statement of Senator James M. Inhofe, *On-The-Record Briefing* at 2 (Sept. 29, 2015) http://www.epw.senate.gov/public/_cache/files/100d0ff0-bb2d-4e6a-a9b9-16118ca08f77/09292015-jmi-opening.pdf ........................................................ 13-14

*The authorities upon which Amici chiefly rely are marked with asterisks.

## GLOSSARY

DPS……………………………………………………Distinct Population Segment

ESA……………………………Endangered Species Act, 16 U.S.C. §§ 1531-1544

## STATEMENTS OF IDENTITY, AUTHORITY TO FILE, AND INTEREST

As required under Rule 29(c)(4) of the Federal Rules of Appellate Procedure, amici curiae here include the States of Wyoming, Colorado, Idaho, Kansas, Montana, New Hampshire, North Dakota, and Utah (Amici).[1] Rule 29(a) permits the States to file this amicus curiae brief without the consent of the parties or leave of the Court.

Amici's interests in this case arise from the multiple species within the states listed by the United States Fish and Wildlife Service as threatened or endangered under the Endangered Species Act, 16 U.S.C. §§ 1531-1544. The issue presented in this appeal is the Service's authority to create and delist a distinct population segment of a species when that species is already listed across its broad range under the Endangered Species Act. The Service's ability to create distinct population segments to delist species directly affects Amici and their ongoing efforts to work with the Service to manage federally-listed species within the States.

---

[1] Amici have not filed any notice of intent to file an amicus brief under D.C. Circuit Rule 29 because the identity of Amici has only recently become known, and because it was not practicable to identify Amici when the case was docketed in this Court.

## PERTINENT STATUTES AND REGULATIONS

The statutes and regulations herein referenced are contained in the Addendum filed with the Opening Brief for the federal Defendants-Appellants, the Addendum filed with the Brief for Defendants-Appellants State of Michigan and Michigan Department of Natural Resources, and the Addendum filed with the Brief for Intervenor-Defendants-Appellants Hunter Conservation Coalition (Doc. Nos. 1582499, 1584892, and 1587537).

## SUMMARY OF ARGUMENT

The Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, grants the Service the authority to designate a distinct population segment (DPS) for an already-listed species with a large historic range and to delist that DPS. After determining the DPS language contained within the ESA is ambiguous as to whether the Service can in fact delist, the district court decided to the contrary. In doing so, the court impermissibly rejected the Service's reasonable interpretation of the ESA.

As explained by the Service, the district court's interpretation is counter to the language, purpose, and legislative history of the ESA. (Doc. No. 1582499 at 36-50 (citing 16 U.S.C. §§ 1553(a)(1) and 1532(16)). The decision inhibits the federal-state cooperation necessary to recover listed species—one of the most important features of the ESA. The district court's interpretation also provides a

disincentive for states to work with the Service to recover listed species so those species can be returned to state conservation and management. States currently expend considerable resources recovering listed species, and the district court's ruling will discourage states from continuing to invest their time and resources to recover listed species.

## ARGUMENT

The Service created a DPS for wolves in the Western Great Lakes region and delisted that DPS from the overall population of listed wolves in the lower forty-eight states. 76 Fed. Reg. 81,666 (Dec. 2, 2011) (Delisting Rule). The district court found the express language of the DPS provision within the ESA was ambiguous as to whether the Service had the authority to recognize a DPS for a subset of a listed species for the purpose of delisting that DPS. (JA 54). The court then determined that use of the DPS provision to delist healthy subpopulations of a species listed across its broad range was contrary to the purpose of the ESA. (*Id.* at 76-79). The court determined that the DPS provision acted as a "one-way ratchet" to list, but not delist, species. (*Id.* at 66-67).

The district court's determination is contrary to the stated policy objectives of the ESA outlined by Congress and, if sustained, will harm recovery efforts for endangered species. The district court's interpretation—that the Service can use the DPS to list, but not to delist—will discourage states from actively participating in

the management and conservation of species listed under the ESA. In light of the important role states play in recovery efforts, the district court's misinterpretation of the ESA should be reversed, and the Service's Delisting Rule should be reinstated.

## I.     THE DISTRICT COURT FAILED TO CONSIDER ONE OF THE ESA'S MAIN OBJECTIVES: FEDERAL-STATE COOPERATION.

The ESA recognizes the key role states play in the process of recovering listed species. For example, section 6 of the ESA provides limited funding to states for species and habitat conservation actions on non-federal lands. 16 U.S.C. § 1535(d). These lands are used for a variety of conservation actions that contribute toward the recovery of listed species. *Id.* Importantly, section 6 requires the federal government to "cooperate to the maximum extent practicable with the States" in carrying out the ESA. *Id.* § 1535(a).

The cooperative spirit of section 6 is further embodied in the variety of flexible tools that help states plan and implement projects to conserve and recover listed species. To aid in species recovery, the ESA authorizes management agreements and cooperative agreements between the Service and the states. *Id.* § 1535(b) and (c). And conservation grants to the states may include resources for habitat restoration, species status surveys, public education and outreach, captive propagation and reintroduction programs, nesting surveys, general studies, and development of management plans. *Id.* Indeed, "[t]he ESA's flexibility promotes

voluntary partnerships to support America's unique wildlife[.] [The Service] has been responsive to the need to develop flexible, innovative mechanisms to cooperate with states, private landowners, and others, both to preclude the need to list species where possible, and to speed the recovery of those species that are listed." Statement of Dan Ashe, *Improving the Endangered Species Act: Perspectives from the Fish and Wildlife Service and State Governors*, at 2 (Sept. 29, 2015).[2] As Director Ashe noted, the Service has proposed revised regulations to allow states **more** opportunity to provide input to the Service. *Id.*

The Service must "utilize the expertise and solicit the information of state agencies in preparing proposed and final rules to: ... reclassify a species from endangered to threatened (or vice versa) or remove a species from the list." 59 Fed. Reg. 34,274 (July 1, 1994) (policy (B)(1)(d) for listing activities). This policy also recognizes the benefit of utilizing state resources and expertise in a cooperative manner. And it allows the Service, with state assistance, to design and implement

---

[2] Available at http://www.epw.senate.gov/public/_cache/files/e1e9e359-21af-481d-9b4d-7024332ef5a3/ashe-esa-testimony.pdf. Amici request the Court take judicial notice of information posted on official public websites of government agencies. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (citing Fed. R. Evid. 201) (taking judicial notice of a document reported on a government website); *see also Seifert v. Winter*, 555 F. Supp. 2d 3, n.5 (D.D.C. 2008) (citing, *inter alia*, *Coleman v. Dretke,* 409 F.3d 665, 667 (5th Cir. 2005) ("fail[ing] to see any merit to an objection" to appellate court taking judicial notice of the contents of a state agency's website).

monitoring programs for species that have been removed from the lists of endangered and threatened species.

Specifically, the interagency policy recognizes that "States possess primary authority and responsibility for protection and management of fish, wildlife and plants and their habitats, and are in an excellent position to provide for the conservation of these species following their removal from the list." *Id.* (policy (E)(3) for recovery action). Scholars have noted that the expansion of state roles in species preservation under the ESA is desirable because species protection goals are unlikely to be realized without strong state involvement:

> Federalism under the ESA is evolving to include the states in ever expanding roles in species preservation. It does not seem desirable, or even possible, to attempt to stop this trend; states have legitimate interests in their natural resources, and state resources and local knowledge are crucial to the effort to preserve endangered and threatened species. National species protection goals are unlikely to be achieved without strong state involvement, including the ability of states to experiment with alternative regulatory approaches. Conversely, the development of adequate state programs frequently is a response to strong federal environmental policies. In order to ensure that the national interest in species preservation affects the states' equation of interests, **the ESA must continue to encourage states to take endangered species conservation seriously. The structure of state programs, and of the federal-state relationship under [Habitat Conservation Plans] and cooperative agreements, can help to ensure that the states do so.**

Jean O. Melious, *Enforcing the Endangered Species Act Against the States*, 25 Wm. & Mary Envtl. L. & Pol'y Rev. 605, 634-35 (2001) (emphasis added). The

district court's decision here does the opposite. It discourages necessary state involvement.

Although states "possess primary authority and responsibility for protection and management of fish, wildlife and plants and their habitats," when a species is listed as threatened or endangered under the ESA, management of that species is removed from the state in favor of federal control and regulation. 59 Fed. Reg. at 34,275; *see also* 16 U.S.C. § 1533; *Hughes v. Oklahoma*, 441 U.S. 322, 342-43 (1979) (discussing congressional assertion of federal jurisdiction over wildlife). However, states have incentive to work cooperatively with the Service to recover listed species so that once recovery occurs, those species may be returned to state control. This is especially so where a discrete population of a listed species may be characterized as a DPS and delisted. In that instance, a state with a healthy population of a species listed on a broader scale—across the lower forty-eight states for example—can be rewarded for its successful efforts to recover the local population.

The legislative history of the ESA supports the premise that a state with a healthy population of a species listed within a range that extends beyond the state's border should not be penalized for poor recovery efforts elsewhere within the species' range. For example, as noted by the Service, when enacting the ESA Congress was concerned that previous laws requiring species be listed across their

entire range did not allow sufficient flexibility to exclude healthy populations and that such inflexibility meant that "States with good management practices … hav[e] to pay the penalty for the States that are not up to par[.]" (Doc. No. 1582499 at 57 (citing *Endangered Species: Hearings on H.R. 37 Before the Subcomm. on Fisheries and Wildlife Conservation*, 93rd Cong. 327 (1973) (Statement of Rep. John Breaux)). As argued by the Service, the ESA, including the DPS provision, were enacted to solve this problem. (Doc. No. 1582499 at 50-51).

The practical effect of the district court's ruling is that a species listed across the lower forty-eight states cannot be delisted anywhere unless the species is delisted everywhere. Such a result will discourage individual states from expending their scarce resources to help recover those listed species with ranges beyond state lines. States are unlikely to expend resources to recover listed species when there is no reason to believe that those efforts—even if successful—will lead to the return of recovered species to state control and regulation. This result is directly contrary to the ESA's legislative history and statutory language requiring and promoting federal and state cooperation for the recovery of species.

## II.  THE DISTRICT COURT'S RULING WILL DISCOURAGE STATES FROM ACTIVELY PARTICIPATING IN ESA MANAGEMENT AND CONSERVATION EFFORTS.

States currently expend significant resources to recover listed species so that those species may eventually be delisted and returned to state control. The Service

annually compiles "reasonably identifiable" expenditures reported by state agencies for the conservation of listed species. For fiscal year 2013, the most recent available year, the Service reported state expenditures of over $76.2 million. United States Fish and Wildlife Service, *Federal and State Endangered and Threatened Species Expenditures* at 6 (2013).[3] These expenditures do not include proration of staff salaries and other operational and maintenance costs and they do not necessarily constitute all expenditures. *Id.* at 4.

States are rarely rewarded for their remarkable efforts to recover listed species. For example, grizzly bears in the Greater Yellowstone Area have been fully recovered since at least 2003, the first year the minimum estimated population exceeded 500 bears in conjunction with meeting all other demographic recovery criteria. *See* Interagency Grizzly Bear Study Team, *Grizzly Bear Investigations* (2007).[4] Over the last several decades, the three states that comprise the greater Yellowstone ecosystem—Idaho, Montana, and Wyoming—have each spent considerable resources on a species that is fully recovered by all biological measures and that should be delisted from threatened status. The states also strive to meet the parameters identified in the Conservation Strategy for the grizzly bear,

---

[3] Available at http://www.fws.gov/endangered/esa-library/pdf/2013.EXP.FINAL.pdf.

[4] Available at http://nrmsc.usgs.gov/products/IGBST.

including formulation of management strategies and regulations and the maintenance of at least 7,229 square miles of occupied grizzly bear habitat. *See, e.g.*, Wyoming Game and Fish Department, *Annual Report* at A-10 (2014).[5] This extensive work includes population surveys, habitat improvement projects, relocation of bears, and education programs aimed at preventing human and bear conflicts with a goal of reducing bear mortality. *See, e.g.*, Wyoming Game and Fish Department, *Wyoming Grizzly Bear Program Job Completion Reports* (2014).[6]

To those ends, Wyoming alone has spent over $9.2 million over the past five fiscal years on its grizzly bear program. Wyoming Game and Fish Department, *Annual Reports* (2010-2014).[7] Programs and incentives offered through section 6 covered only 1.6% to 3.9% of the amounts Wyoming expended annually. *Id.* For 2013, the Service estimated that state expenditures on grizzly bear recovery in the lower 48 states was over $9.6 million, excluding land acquisition costs. United States Fish and Wildlife Service, *Federal and State Endangered and Threatened*

---

[5] Available at https://wgfd.wyo.gov/WGFD/media/content/PDF/About%20Us/ Commission/ WGFD_ANNUALREPORT_2014.pdf.

[6] Available at https://wgfd.wyo.gov/WGFD/media/content/PDF/Wildlife/Large %20Carnivore/JCR_GRIZZLY_2014.pdf.

[7] Available at https://wgfd.wyo.gov/Wildlife-in-Wyoming/More-Wildlife/Large- Carnivore/Grizzly-Bear-Management.

*Species Expenditures* at 8 (2013).[8] Significant resources have been expended to manage a species that is no longer threatened in the Greater Yellowstone Area.

The district court's DPS interpretation could have a substantial negative effect and counter the states' efforts to recover the grizzly bear within the Greater Yellowstone Area and return the species to state control. When the Service last attempted to delist the grizzly bear in 2007, the Service created a DPS for the Greater Yellowstone Area and then delisted the bear population in the DPS. 72 Fed. Reg. 14,866 (Mar. 29, 2007). In that regard, the grizzly bear delisting rule mirrors the delisting rule for wolves at issue here.

Ultimately, a district court set aside the grizzly bear delisting rule due to concerns which did not involve the DPS issue presented here. *Greater Yellowstone Coal., Inc. v. Servheen*, 672 F. Supp. 2d 1105 (D. Mont. 2009), *aff'd in part, rev'd in part*, 665 F.3d 1015 (9th Cir. 2011). However, the district court set aside the entire rule, which included the DPS designation. *Id.* at 1126. Once the Service addresses the issue raised by the Ninth Circuit, the states expect the Service to again recognize the Greater Yellowstone Area DPS and delist the bear in a future rule. But because grizzly bears are listed range-wide in the lower forty-eight states, the district court's opinion here could prohibit the Service from using a DPS to delist the bear in a future rule. The bear could not be delisted in Idaho, Montana,

---

[8] Available at http://www.fws.gov/endangered/esa-library/pdf/2013.EXP.FINAL.pdf.

and Wyoming even though it is recovered within the Greater Yellowstone Area, regardless of how much time, effort, and money the states have invested in recovering the bear population within their borders—and regardless of the fact that the Greater Yellowstone Area independently qualifies as a DPS under the ESA. 72 Fed. Reg. at 14,874-78.

Wyoming made its expenditures with the expectation that the Service will designate a DPS for the bear and return management to the State Game and Fish Department. Such is the primary objective of the ESA: to recover endangered and threatened species. (AR506). The grizzly bear's continued listed status needlessly inflates the cost of managing a species that is fully recovered throughout the Greater Yellowstone Area and consumes resources of the Service and the states that could be spent on species that are actually threatened. The ESA and the DPS were created to avoid punishing states with good management efforts, and the district court's ruling thwarts that purpose and hinders federal-state cooperation to recover species.

States that have expended resources to recover and return listed species to state management are increasingly frustrated with delisting complications. Wyoming's Governor Mead has explained:

> By any measure, the ESA is broken. Since 1973, less than one percent of the 2,280 species listed has been removed from the list. Either listing has not led to recovery or recovered species have been kept on the list.

Remarks of Governor Matthew H. Mead, *Endangered Species Act Reform* at 1 (Sept. 29, 2015).[9] Montana Governor Bullock also recently discussed similar frustrations before a United States Senate Subcommittee:

> [I]t's worth mentioning Grizzly Bears, a success story for recovery but which still remains listed. We're working out our differences with the [Service], and I'm optimistic that we'll find a path forward soon for delisting. There are many aspects to this story that are positive – like the strong state and federal partnerships that have formed to manage the Great Bear, and the private landowners that have engaged and demonstrated remarkable commitment. But the Grizzly Bear needs to be delisted and returned to state management. The successful recovery of this species shows us that the delisting process must become more straightforward, so we can spend our collective resources on species not yet recovered.

Remarks of Governor Steve Bullock, *Improving the Endangered Species Act: Perspectives from the Fish and Wildlife Service and State Governors* at 9 (Sept. 29, 2015).[10] United States Senator James Inhofe of Oklahoma addressed some of the reasons why recovered species remain listed for years and offered a solution that proposes more state and local involvement:

> We must address the fact that the Service spends more time and resources fighting lawsuits and listing species than actually recovering and delisting species. If states and local conservationists had a larger role in the process, we could use our resources much more efficiently to ensure that our precious ecosystems continue to thrive.

---

[9] Available at http://www.epw.senate.gov/public/_cache/files/08739d01-3f01-4b2c-8189-6beb2b22f738/gov.-mead-testimony.pdf.

[10] Available at http://www.epw.senate.gov/public/_cache/files/2d20e187-0451-43f5-b871-7bb79ac62348/govbullock-senate-epw-testimony-9-29-15.pdf.

Statement of Senator James M. Inhofe, *On-The-Record Briefing* at 2 (Sept. 29, 2015).[11] The delisting complications states encounter today run counter to the purpose and history of the ESA. The Service has the discretion to recognize discrete, recovered populations of a species listed on a broader level and delist those populations. Otherwise, states that cooperate with the Service and incorporate good management practices to recover listed species will "pay the price" for states that are "not up to par." *Endangered Species: Hearings on H.R. 37 Before the Subcomm. on Fisheries and Wildlife Conservation*, 93rd Cong. 327 (1973) (Statement of Rep. John Breaux).

## CONCLUSION

The district court's cramped interpretation of the DPS provision of the ESA ignores the ESA's plain language, legislative history, and the broader purpose to recover species through federal-state cooperative efforts. It exacerbates the problem identified by Senator Inhofe and Governors Bullock and Mead and provides states little incentive to expend considerable resources to engage in recovery efforts. Accordingly, this Court should reverse the district court's order and restore the flexibility and incentives for state cooperation contemplated by Congress when it enacted the ESA.

---

[11] Available at http://www.epw.senate.gov/public/_cache/files/100d0ff0-bb2d-4e6a-a9b9-16118ca08f77/09292015-jmi-opening.pdf.

DATED this 8th day of June, 2016

/s/ Peter K. Michael
_____
Peter K. Michael
Wyoming Attorney General
James Kaste
Michael J. McGrady
D. David DeWald
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
peter.michael@wyo.gov
james.kaste@wyo.gov
mike.mcgrady@wyo.gov
david.dewald@wyo.gov
*Counsel for Amicus Curiae State of Wyoming*


/s/ Cynthia Coffman (with permission)
_____
Cynthia Coffman
Attorney General of Colorado
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
(720) 508-6030 *facsimile*
*Counsel for Amicus Curiae State of Colorado*

/s/ Lawrence G. Wasden (with permission)
Lawrence G. Wasden
Attorney General of Idaho
P.O. Box 83720
Boise, Idaho 83720-0010
(208) 334-2400
(208) 854-8071 *facsimile*
*Counsel for Amicus Curiae State of Idaho*


/s/ Derek Schmidt (with permission)
Derek Schmidt
Attorney General of Kansas
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
(785) 296-2215
(785) 296-6296 *facsimile*
*Counsel for Amicus Curiae State of Kansas*


/s/ Timothy C. Fox (with permission)
Timothy C. Fox
Attorney General of Montana
215 N. Sanders, 3rd Floor
Helena, MT 59620
(406) 444-2026
(406)444-3549 *facsimile*
*Counsel for Amicus Curiae State of Montana*


/s/ Joseph A. Foster (with permission)
Joseph A. Foster
Attorney General of New Hampshire
33 Capitol Street
Concord, New Hampshire 03301
(603) 271-3658
(603) 271-2110 *facsimile*
*Counsel for Amicus Curiae State of New Hampshire*

/s/ Douglas A. Bahr (with permission)
Douglas A. Bahr
Solicitor General of North Dakota
500 N. 9th Street
Bismarck, North Dakota 58501-4509
(701) 328-3640
(701) 328-4300 *facsimile*
*Counsel for Amicus Curiae State of North Dakota*


/s/ Sean D. Reyes (with permission)
Sean D. Reyes
Attorney General of Utah
350 North State Street, Suite 230
Salt Lake City, Utah 84114-2320
(801) 538-9600
(801) 538-1121 *facsimile*
*Counsel for Amicus Curiae State of Utah*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with Federal Rule of Appellate Procedure 29(d) and 32(a)(7), because the brief contains 3,119 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

DATED this 8th day of June, 2016.

/s/ D. David DeWald
D. David DeWald
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
david.dewald@wyo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2016, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

The participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ D. David DeWald
D. David DeWald
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
(307) 777-6946
(307) 777-3542 *facsimile*
david.dewald@wyo.gov